IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **JANICE SATTERFIELD,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,**<br><br>　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:11-cv-112-SA**<br><br><br>**Magistrate Judge Samuel Alba** |

　　　　Before the Court is an action filed by Plaintiff, Janice Satterfield, asking the Court to reverse the final agency decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. §§ 401-434, 1381-1383f. The Administrative Law Judge ("ALJ") found that Ms. Satterfield was capable of performing her past relevant work and therefore was not disabled as defined by the Act. Ms. Satterfield seeks an order reversing the Commissioner's final decision and ordering payment of benefits; in the alternative, Ms. Satterfield seeks to have this case remanded for further administrative proceedings.

　　　　The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331

F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *See Lax*, 489 F.3d at 1084.

Having carefully reviewed and considered the ALJ's decision, the record, and the parties' pleadings, the Court reverses and remands because the decision contains legal error and is not supported by substantial evidence.

## BACKGROUND

Ms. Satterfield protectively filed her applications for DIB and SSI in September 2006, alleging disability beginning on February 25, 2006. (Doc. 8, the certified copy of the administrative record relating to Janice Satterfield ("AR __") 111-21.) Her applications were denied initially and on reconsideration. (AR 57-60.) Following a November 6, 2008 hearing before an ALJ (AR 20-56), the ALJ denied Ms. Satterfield's claim on April 23, 2009 (AR 8-19). The Appeals Council denied Ms. Satterfield's request for review on December 16, 2010 (AR 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981.

After receiving the Appeals Council's denial of her request for review, Ms. Satterfield filed her complaint on January 26, 2011, and the case was assigned to United States District Judge Dee Benson. (Doc. 3.) The parties consented to magistrate judge jurisdiction on April 11, 2011, and April 28, 2011, and the case was reassigned to United States Magistrate Judge Samuel

Alba pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. 13.)

Ms. Satterfield filed her opening brief on May 20, 2011.  (Doc. 14.)  The Commissioner filed his answer brief on June 24, 2011.  (Doc. 16.)  Ms. Satterfield then filed her reply brief on July 5, 2011.  (Doc. 17.)

## ANALYSIS

Ms. Satterfield makes the following three arguments: (1) the ALJ erred by failing to properly evaluate the medical opinion evidence; (2) the ALJ erred in her residual functional capacity ("RFC") assessment; and (3) the ALJ failed to support with substantial evidence her finding that Ms. Satterfield can return to her past relevant work.  The Court addresses each of these arguments in turn.

### A. Medical Opinion Evidence

Ms. Satterfield argues the ALJ erred by failing to properly evaluate the medical opinion evidence.  When evaluating medical opinion evidence, the ALJ must determine how much weight to give each opinion.  *See* 20 C.F.R. § 404.1527.  The ALJ considers the following factors:  (1) whether the medical source examined the claimant; (2) the length, nature, and extent of any treatment relationship, including the treatment provided and the examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the rending source is a specialist in the area upon which an opinion is rendered; and (6) other factors which tend to support or contradict the opinion.  *See* 20 C.F.R. § 404.1527(d).  The ALJ need not expressly apply each of

these factors in deciding what weight to give an opinion; not every factor applies in every case. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, *available at* 1996 WL 374188, at *5).

A doctor's opinion can be rejected if it is brief, conclusory, and unsupported by medical evidence. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Additionally, under the regulations, an opinion that a claimant is "disabled" is not a medical opinion, but an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1)), 416.927(e)(1). Nevertheless, the ALJ must consider such opinions and apply the relevant factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d). *See* SSR 96-5p, *available at* 1996 WL 374183, at *3.

The Court is unpersuaded by Ms. Satterfield's argument that the ALJ failed to properly evaluate the medical opinion evidence. First, although Ms. Satterfield considered Dr. Gardner to have been one of her doctors in November 2008, the Administrative Record ("AR") does not support that Dr. Gardner was treating Ms. Satterfield at that time. The AR contains Dr. Gardner's treatment notes from January 2004 through May 2006 (AR 242-67, 297-98), and from January 2007 through November 2007 (AR 332-45). Thus, the last treatment note in the AR was dated a year before Dr. Gardner completed her assessment of Ms. Satterfield's functional abilities (*compare* AR 332-45 (2007 treatment notes) *with* AR 395-98 (November 2008 opinion)). Although Dr. Gardner was aware of Ms. Satterfield's kidney obstruction (AR 394), which was found in December 2007 (AR 391), the AR does not contain any evidence that Dr. Gardner was

actually treating Ms. Satterfield for the obstruction or anything else at that time.  Further, although Dr. Smallwood noted in January 2008 that Ms. Satterfield would be having her "mammogram and pelvic exam with Dr. Gardner" (AR 392), again, the AR does not contain any evidence that such an exam ever occurred.  Also, at the ALJ hearing, Ms. Satterfield testified that she started seeing Dr. Smallwood, who lives in Cedar City, at the first of 2008 because she did not have a vehicle to take her to see Dr. Gardner (AR 28), and when asked if Ms. Satterfield saw Dr. Smallwood for the same treatment and same impairments for which she previously saw Dr. Gardner, Ms. Satterfield answered "Yes" (AR 29).  Thus, the Court concludes that the ALJ's statement that Dr. Gardner was not treating Ms. Satterfield when she authored the November 2008 assessment was not unreasonable.

Ms. Satterfield argues the medical record contains numerous observations and notes that support the limitations listed in Dr. Gardner's opinion and lists record evidence that arguably supports Dr. Gardner's opinion (Doc. 14, at 10-11; Doc. 17, at 4); however, as mentioned above, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency, *see Lax*, 489 F.3d at 1084.  Rather, the Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied.  *See Lax*, 489 F.3d at 1084.  Even though the record contains some evidence that supports Dr. Gardner's opinion, it also contains sufficient evidence that is inconsistent with that opinion, as set forth by the Commissioner in his brief.  (Doc. 16, at 7-8.)

Moreover, the ALJ reasonably considered Ms. Satterfield's daily activity level when according weight to Dr. Gardner's opinion.  *See Castellano v. Sec'y Health & Human Servs.*, 26

F.3d 1027, 1029 (10th Cir. 1994).  Ms. Satterfield testified that she was able to do light housework, laundry, dishes, and cooking.  *See id.* (listing same daily activities in rejecting treating physician's opinion that claimant was disabled).  Ms. Satterfield also testified that she took walks, drove a car, visited friends and relatives, did not require assistance dressing or grooming, and spent time reading and watching television.  (AR 17.)  Using the ALJ's example, although Dr. Gardner made observations regarding Ms. Satterfield's hands, the AR does not contain any record showing functional testing was performed, as noted by the ALJ.

In conclusion, the ALJ relied on Ms. Satterfield's treatment relationship with Dr. Gardner and whether Dr. Gardner's opinion was consistent with the AR and Ms. Satterfield's daily activity level – specific, legitimate reasons upon which to base the weight given to Dr. Gardner's opinion.  *See* 20 C.F.R. § 404.1527(d)(2) & (d)(4).  Therefore, Ms. Satterfield's challenge of the weight given to Dr. Gardner's opinion fails.

Regarding Dr. Turek, the Court finds persuasive the Commissioner's argument that Dr. Turek did not offer a medical source opinion to which the ALJ needed to assign weight.  (Doc. 16, at 8.)  As the Commissioner points out, a medical opinion is a statement about what a person can still do despite his impairments.  *See* 20 C.F.R. § 404.1513(b)(6).  Although after examining Ms. Satterfield in October 2007 Dr. Turek included in his "summary" that Ms. Satterfield was having "very major difficulties focusing, concentrating and is therefore relatively forgetful" (AR 331), Dr. Turek did not address Ms. Satterfield's specific functional limitations.

Further, the ALJ's opinion demonstrates that she reviewed Dr. Turek's report, acknowledged that Dr. Turek felt that Ms. Satterfield had "difficulty focusing and concentrating"

(AR 18), and then noted in the next paragraph, in reference to Dr. Turek's observation about Ms. Satterfield's difficulty focusing and concentrating, that the state agency psychologist had encompassed those qualities in his review of the record (AR 18).  The ALJ further noted that Ms. Satterfield had received her psychological medication management through her primary physician rather than seeking help from a specialist, and that because more intensive therapy had not been recommended to Ms. Satterfield, it appeared that "control of her mental condition is pretty good with medication management," (*id.*), thus explaining the reasoning behind her treatment of Dr. Turek's and the state agency psychologist's reports.

### B.  RFC Assessment

Second, Ms. Satterfield challenges the ALJ's RFC assessment.  Much of Ms. Satterfield's argument is based on her medical opinion evidence argument.  The Court has rejected that argument; thus, it provides no basis for Ms. Satterfield's challenge of the RFC assessment.  For example, the ALJ did not include functional limitations regarding Ms. Satterfield's arthritis, but as explained above, although Ms. Satterfield has been prescribed Relafen since 2005 (AR 257, 259, 261) and Dr. Gardner noted swollen joints, and red, tingling hands and feet (AR 254), the ALJ noted that no testing had been conducted to support any functional limitations from the arthritis.  Regarding Ms. Satterfield's husband's testimony, the ALJ did state that his testimony "could well be influenced by the motive of secondary gain," but the ALJ also explained that "the conclusions he has reached regarding his wife's symptoms and the extent of the related limitations are not consistent with the standard required to find her disabled under the Social Security Act and Regulations."  (AR 17.)  Thus, contrary to Ms. Satterfield's argument, the ALJ

did not completely base her consideration of Ms. Satterfield's husband's testimony on the possible influence of his motive for secondary gain.  Moreover, with regards to Ms. Satterfield's argument that SSR-96-7p required the ALJ to discuss the side effects caused by Ms. Satterfield's medications, the ALJ references SSR 96-7p in making her credibility finding, and the ALJ states that she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.929 and 416.929 and SSRs 96-4p and 96-7p."  (AR 16.)  This statement and reference to SSR 96-7p are sufficient for the Court to conclude the ALJ considered the necessary requirements of SSR 96-7p, including the side effects of Ms. Satterfield's medications.

      Nevertheless, the Court concludes that the ALJ's RFC analysis is not supported by substantial evidence because the ALJ's pain analysis contains significant errors.  The ALJ found impairments existed that could reasonably be expected to produce Ms. Satterfield's symptoms (AR 16), *see* SSR 96-7p, but found that Ms. Satterfield's allegations exceed the limitations that could "reasonably be expected from the medical findings" (AR 16).  The Commissioner concedes that the ALJ's reliance on the "numerous references in the medical evidence . . . indicative of [Ms. Satterfield's] non-compliance with the medical regimen specified by her physicians" (AR 16) was erroneous, as no such "numerous references" of non-compliance exist (Doc. 16, at 14).  The Commissioner does not respond to Ms. Satterfield's argument that the Commissioner's discussion of Ms. Satterfield not experiencing weight loss or muscle atrophy (AR 16) was based on the ALJ's own speculation (Doc. 14, at 17), and the Court finds that

argument persuasive and that reliance on those factors was erroneous. *See Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993) (holding that an ALJ cannot substitute his own opinion for medical opinion). The ALJ also mischaracterized the record evidence by stating that Ms. Satterfield's impairments have consistently been characterized as "minimal, mild, slight, normal, and unremarkable" (AR 16); this statement ignores both Dr. Turek's two GAF scores below 50 (AR 280, 331), which is not a minimal or normal finding, and the DDS physician's findings of a number of moderate mental impairments (AR 376-78). As Ms. Satterfield argues, everyone in the record characterized Ms. Satterfield's mental impairments as moderate to severe impairments. (Doc. 14, at 16.) Further, as Ms. Satterfield points out, the record contains medical findings supporting that Ms. Satterfield has physical impairments that are not normal or mild. (Doc. 14, at 17.) Although the ALJ also based her opinion on Ms. Satterfield's daily activity level (AR 17), as discussed above, the Court concludes that the ALJ's errors in her pain analysis are significant enough to cast doubt on whether the ALJ's finding regarding Ms. Satterfield's pain - and with it, Ms. Satterfield's credibility - are based on substantial evidence.

Consequently, the Court concludes that on remand, the ALJ must conduct a new pain analysis, and with it, a new RFC analysis.

### C. Ability to Return to Past Relevant Work

Finally, the Court concludes the ALJ's step four finding that Ms. Satterfield could perform her past relevant work as a fast food worker was made without the findings required by law and is not supported by substantial evidence. Although Ms. Satterfield bears the burden of

proving her inability to perform her past relevant work, *see Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e) and *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989)), that burden does not excuse the ALJ from the requirement that she make an "informed comparison between past work requirements and the claimant's functional limitations as a condition to any step-four disposition," *James v. Chater*, 96 F.3d 1341, 1342 n.2 (10th Cir. 1996). The ALJ did not make such a comparison in this case. Ms. Satterfield has demonstrated that the ALJ's error in failing to do so was not harmless because the record supports that her impairments would functionally limit her ability to perform the job of fast food worker, both as she performed it in the past and as it is described in the *Dictionary of Occupational Titles* ("DOT").

As the Commissioner explains, SSR 82-61 defines past relevant work as the claimant's ability to perform either (1) "the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or (2) "the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Thus, the evidence must support that Ms. Satterfield's impairments did not prevent her from performing the job of fast food worker either as she performed it in the past or as it is described in the DOT.

The evidence does not support that Ms. Satterfield's impairments, as found by the ALJ, would allow her to perform the position of fast food worker as she had performed it in the past. Ms. Satterfield explained that her past job as a fast food worker required her to stand and/or walk for eight hours of an eight-hour workday (AR 150); however, the ALJ's own RFC assessment acknowledged that Ms. Satterfield's impairments required that she be able to sit during the

workday (AR 15).  Furthermore, Ms. Satterfield testified that her former fast food worker job required her to deal with customers (AR 35); however, the ALJ's RFC assessment included a finding of moderate impairment in Ms. Satterfield's ability to concentrate, follow detailed instructions, and deal with stress (AR 15).  Dealing with customers appears to be in conflict with the ALJ's finding that Ms. Satterfield was moderately impaired in her ability to deal with stress, and that conflict needed to be but was not addressed by the ALJ.  Finally, Ms. Satterfield testified that her former fast food worker job required cashiering (AR 35); however, the ALJ specifically found that a cashier job would be "too complex for [Ms. Satterfield's] current condition" (AR 18).  Thus, the requirements of Ms. Satterfield's former job would not have accommodated the ALJ's own RFC assessment and findings.

      Ms. Satterfield also has demonstrated that the evidence does not support that Ms. Satterfield's impairments, as found by the ALJ, would allow her to perform the position of fast food worker as described by the DOT.  As set forth above, the ALJ's RFC assessment found Ms. Satterfield had a moderate impairment in her ability to concentrate, follow detailed instructions, and deal with stress (AR 15); the DOT (like Ms. Satterfield's past job) requires that a fast food worker deal with customers, *see* DOT 311.472.010, which could be impacted by Ms. Satterfield's ability to deal with stress.  As explained above, this potential conflict needed to be but was not addressed by the ALJ.  Also, like Ms. Satterfield's past fast food worker job, the DOT states that a fast food worker job requires cashiering, *see id.*; however, as explained above, the ALJ specifically found that a cashier job would be "too complex for [Ms. Satterfield's] current condition" (AR 18).

The ALJ not only did not make any "informed comparison" between her RFC assessment and the demands of a fast food worker job, but the ALJ offered no discussion or supportive explanation for her finding that P can return to her work as a fast food worker (AR 18). Ms. Satterfield has successfully demonstrated that conflicts exist between the ALJ's RFC assessment and findings and the job of fast food worker, both as Ms. Satterfield performed it in the past and as described by the DOT. As a result, the Court concludes that the ALJ's step four finding was not supported by substantial evidence. Therefore, the case must be reversed and remanded to allow Ms. Satterfield's ability to perform her past relevant work to be evaluated as required by law.[1]

---

[1] The Court notes that at Ms. Satterfield's hearing before the ALJ, the ALJ said that a vocational expert ("VE") was not available for the hearing, but that the ALJ would prepare interrogatories for a VE, and then Ms. Satterfield's attorney would have an opportunity to ask his own questions to the VE. (AR 50.) The AR contains no evidence to indicate that the ALJ ever contacted a VE regarding this case, and Ms. Satterfield has represented that her attorney was never informed of any input from a VE. (Doc. 14, at 19.) VE testimony is not required to make a step four decision. It is simply one way for the ALJ to show the comparison between the RFC assessment and the demands of a claimant's past relevant work; however, such testimony may have resolved the current issue before the Court because the ALJ herself did not make the appropriate findings comparing the two.

**ORDER**

Based on the above analysis, IT IS HEREBY ORDERED that the Commissioner's decision is REVERSED AND REMANDED because it is not supported by substantial evidence and contains reversible legal error.

DATED this 31st day of October, 2011.

BY THE COURT:

_____
SAMUEL ALBA
United States Magistrate Judge